**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**ST. LOUIS DIVISION**

| | |
|---|---|
| ESTATE OF LAMOREE' MOORE,<br> by and through its Administrator,<br>LEONETTA SIMPSON, LEONETTA SIMPSON,<br>individually and as next of kin, and ANDRE<br>MOORE, individually and as next of kin, | Civil Action No. _____ |
| | |
| ***Plaintiffs***, | |
| v. | **JURY TRIAL DEMANDED** |
| | |
| ALPHA KAPPA ALPHA SORORITY, INC.,<br>GAMMA KAPPA OMEGA CHAPTER of<br>ALPHA KAPPA ALPHA SORORITY, INC.,<br>SIGMA GAMMA CHAPTER of ALPHA<br>KAPPA ALPHA SORORITY, INC.,<br>ALPHA PHI ALPHA FRATERNITY, INC.,<br>BETA ETA CHAPTER of ALPHA PHI ALPHA<br>FRATERNITY, INC., MU KAPPA LAMBDA<br>CHAPTER of ALPHA<br>PHI ALPHA FRATERNITY, INC.,<br>KYARA C. ROGER, individually and in her official capacity,<br>TREYONNE "TREY" MASAUN RAWLS,<br>ALONTAE L. HOLIDAY,<br>CUSHE'          RAE'LL<br>BLACKMON,          MIA<br>PORTER,<br>RODNISHA HENDERSON,<br>SARAH SMITH-WHITEHEAD,<br>AMBER HENDERSON, TAYLOR<br>MATTHEWS, KYLA MCDANIEL,<br>CARISSA TEAL ROBINS,<br>JARELLE RELLE SHIPP,<br>STEPHANIE [LAST NAME UNKNOWN],<br>JOHN DOES 1–10, and JANE DOES 1–10, | |
| | |
| ***Defendants.*** | |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs, ESTATE OF LAMOREE' MOORE, by and through its Administrator, LEONETTA SIMPSON, and LEONETTA SIMPSON and ANDRE MOORE, individually and as surviving parents and next of kin, by and through undersigned counsel, respectfully allege as follows:

### INTRODUCTION

1.      This is a civil action for wrongful death, survival, and civil rights violations brought by the Estate and parents of LaMoree' Moore, a 24-year-old woman who died by suicide following a prolonged period of documented physical and psychological hazing and bullying which resulted in her mental deterioration. This deterioration was directly caused by a pattern of hazing, harassment, sexual misconduct, and institutional inaction while LaMoree' was pledging and later a member of Alpha Kappa Alpha Sorority, Inc., Sigma Gamma Chapter ("AKA") while enrolled at Southern Illinois University at Carbondale ("SIUC").

2.      In the spring of 2019, LaMoree' began the AKA initiation process. As part of that initiation process, LaMoree' and the other pledges were subject to a pattern of hazing, harassment, sexual misconduct, and institutional inaction. The pattern continued after her mother withdrew LaMoree' from SIUC and returned her to her home in Florissant, Missouri to try and protect her mental health. LaMoree' died by suicide at her home on November 17, 2022.

3.      Importantly, between October 11, 2021, and November 30, 2022, LaMoree's mother, Leonetta Simpson, submitted multiple written communications to national and regional officers of AKA, including Pamela Watkins and Central Regional Director Sonya L. Bowen, specifically identifying her daughter by name and describing LaMoree's psychiatric deterioration that was triggered by the defendants' conduct, her resulting hospitalization for psychosis, her reticence

about continuing her association with an organization and members who had treated her so poorly, and her need for urgent organizational support. These communications establish actual and constructive notice at the highest levels of the sorority and form a core basis for foreseeability and institutional liability.

4.      Alpha Kappa Alpha Sorority, Inc. operates through a hierarchical structure consisting of national leadership, regional directors, supervising graduate chapters, and local undergraduate chapters. No chapter of AKA is permitted to initiate members, conduct a Membership Intake Process (MIP), or engage in public sorority functions without express authorization and oversight from both the National Sorority and its designated Regional Director.

5.      The Gamma Kappa Omega Chapter, a graduate/alumnae chapter, served as the supervising body for the Sigma Gamma Chapter at Southern Illinois University Carbondale. Gamma Kappa Omega's leadership was responsible for enforcing all national rules, including intake procedures, hazing policies, and member conduct. In this role, Gamma Kappa Omega acted as an authorized agent of the national sorority.

6.      The actions and omissions of Gamma Kappa Omega and Sigma Gamma— particularly their failure to prevent, intervene in, or report ongoing hazing—are attributable to the national sorority under well-established principles of agency and organizational liability. By delegating authority and failing to supervise their subordinate bodies, Alpha Kappa Alpha Sorority, Inc. enabled and perpetuated the environment that caused LaMoree' Moore's death.

8.      Plaintiffs allege that LaMoree' Moore's death was a foreseeable and preventable consequence of (a) an unauthorized and abusive intake process orchestrated by agents of AKA, including Gamma Kappa Omega Chapter of AKA, Sigma Gamma chapter of AKA, Inc., and members of Alpha Phi Alpha Fraternity, Inc. ("APA"), including its Beta Eta Chapter and the

Carbondale, Illinois supervising graduate chapter, Mu Kappa Lambda, and (b) the negligent and reckless refusal of these organizations—including their agents and officers—to respond to years of escalating warnings and complaints from LaMoree' and her mother, Leonetta Simpson.

9.      The abuse inflicted on LaMoree began during her Spring 2019 initiation into AKA's Sigma Gamma Chapter and continued through 2022, after she had returned to her home in Missouri. It included physical hazing, psychological degradation, coerced conduct, gender-based targeting, and emotional isolation. These actions were carried out by individual defendants including Kyara C. Roger, and other identified and unidentified members of AKA and APA. Male fraternity members of APA, including "Trey" and "KT," were actively involved in enforcing aspects of this unsanctioned process.

10.     Beginning in late 2019, LaMoree began reporting symptoms of mental distress to family and healthcare professionals, including paranoia, depression, and suicidal ideation. She was psychiatrically hospitalized at least four times between 2020 and 2022, and her treating physicians directly linked her condition to trauma from her sorority hazing experience. Medical records from Touchette Regional Hospital, SSM Health DePaul in Bridgeton, Missouri, and BJC Healthcare in St. Louis, confirm these disclosures, including allegations of sexual assault and persistent bullying.

11.     Between December 2020 and October 2023, Leonetta Simpson submitted multiple formal complaints to national and graduate chapter officials of AKA and APA, including Nicole Barrett (AKA) and T. Byerson (APA). These complaints included specific names, dates, and descriptions of LaMoree's abuse and deteriorating mental health. Despite receiving these communications, neither organization initiated an internal investigation, nor did they offer protective support to LaMoree. Instead, they minimized and ignored her condition, in some cases labeling her as "unstable."

12.     The trauma LaMoree' endured was not speculative or isolated. In addition to her own written journal entries and suicide videos—many recovered from her phone posthumously— witnesses, including Yasmine Taylor, Korissa, and Keke, have corroborated her accounts. Former members of the AKA chapter and graduate affiliates have also submitted firsthand emails identifying the same individuals and patterns of abuse.

13.     As detailed herein, the named Defendants and their agents acted with negligence, recklessness, deliberate indifference, gross negligence, and in violation of federal and state law. Their conduct caused LaMoree' to suffer years of psychological torment, multiple hospitalizations, and ultimately, death.

14.     Plaintiffs assert claims for wrongful death, survival damages, civil rights conspiracy, intentional and negligent infliction of emotional distress, negligent supervision and retention, and hazing, under both federal and state law. Plaintiffs seek all relief permitted under law, including compensatory and punitive damages, attorney's fees, and injunctive remedies to prevent further harm to others.

15.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because Plaintiffs assert claims arising under federal law, including 42 U.S.C. § 1985. Supplemental jurisdiction over state law claims is proper under 28 U.S.C. § 1367 because such claims are so related to the federal claims that they form part of the same case or controversy under Article III of the U.S. Constitution.

16.     This Court has personal jurisdiction over all named Defendants pursuant to Missouri's Long-Arm Statute, § 506.500, RSMo, because Defendants, individually and through their agents, committed tortious acts within the State of Missouri and engaged in conduct that foreseeably caused harm in this forum. Specifically, Defendants engaged in a sustained course of harassment, intimidation, hazing, and emotional abuse that continued after LaMoree' Moore left Illinois and

returned to her home in Florissant, Missouri. Defendants transmitted retaliatory messages, coordinated acts of coercion, negligence, recklessness and willful infliction of emotional and psychological distress upon LaMoree' while she was a resident of Missouri, thereby causing injury within this state. These actions fall squarely within the scope of § 506.500.1(3), RSMo, which provides that Missouri courts may exercise jurisdiction over any person or entity who "[c]ommits a tortious act within this state."

17.    Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the Eastern District of Missouri. Although portions of the hazing and abuse began while LaMoree' Moore was a student in Illinois, the effects of that abuse—including continued harassment, emotional trauma, and institutional neglect—persisted after she returned to Missouri. The ongoing conduct caused her emotional and psychological injuries to worsen while residing in this District, culminating in her death by suicide.

18.    LaMoree' Moore was a legal resident of Florissant, Missouri, and died by suicide within this District. Her parents, Plaintiffs Leonetta Simpson and Andre Moore, also reside in the Eastern District of Missouri. The wrongful death and survival claims arise from harms that occurred and culminated in this forum. Accordingly, both personal jurisdiction and venue are proper in this Court.

## PARTIES

19.    Plaintiff ESTATE OF LAMOREE' MOORE is the legal estate of LaMoree' Moore, deceased, and brings this action through its Administrator, LEONETTA SIMPSON, pursuant to Missouri Revised Statutes § 473.010 et seq. Ms. Simpson will seek appointment as Administrator by the Probate Division of the Circuit Court of St. Louis City, Missouri.

20.    Plaintiff LEONETTA SIMPSON is a person of full age of majority and citizen of the state of Missouri and is the biological mother of LaMoree' Moore. She brings claims individually for her own emotional injuries, and as the next of kin under Missouri's wrongful death statute.

21.    Plaintiff ANDRE MOORE is a person of full age of majority and citizen of the state of Missouri is the biological father of LaMoree' Moore and brings claims individually and as next of kin. He resides in Missouri and supports this action brought on behalf of their daughter.

22.    Defendant ALPHA KAPPA ALPHA SORORITY, INC. ("AKA") is a national sorority incorporated under the laws of Illinois, with its headquarters in Chicago which may be served through its President and Executive Officers at 5656 South Stony Island Avenue Chicago, IL 60637. AKA exercises control over its local undergraduate and graduate chapters, promulgates intake procedures, and is responsible for enforcing its anti-hazing and disciplinary policies. AKA was placed on repeated notice of the abuse and harassment suffered by LaMoree' Moore and failed to take any meaningful corrective action; and at all times relevant herein; as the national governing body with control over chapter activities and membership processes, Alpha Kappa Alpha Sorority, Inc. is vicariously liable for the conduct of its agents, including the Gamma Kappa Omega Chapter and its members, whose acts and omissions occurred within the scope of their delegated authority.

23.    Defendant GAMMA KAPPA OMEGA CHAPTER, also known as AKA's graduate chapter ("GKO"), is a supervising alumnae chapter operating under the national AKA umbrella; which may be served through its President and Executive Officers at PO Box 519, Carbondale, IL 62903. GKO had responsibility for oversight of the Sigma Gamma undergraduate chapter at SIUC and was made aware of LaMoree's suffering but failed to intervene or investigate. GKO's

historical pattern of ignoring complaints and failing to protect younger members was a substantial contributing factor to the abuse LaMoree' endured.

24.    Defendant SIGMA GAMMA CHAPTER is a collegiate chapter of AKA operating on the campus of Southern Illinois University at Carbondale ("SIUC") under the direction of both AKA national and GKO which may be served through its President and Executive Officers at Fraternity and Sorority Life Student Center Room 305 - MC 4425 1255 Lincoln Drive Carbondale, Illinois 62901. Members of this chapter, acting individually and collectively, engaged in an unauthorized hazing and harassment scheme that severely harmed LaMoree' Moore.

25.    Defendant ALPHA PHI ALPHA FRATERNITY, INC. ("APA") is a national fraternity incorporated in Maryland, with local chapters across the United States including SIUC which may be served through its President and Executive Officers at 2313 Saint Paul Street Baltimore, Maryland 21218. APA regulates membership intake and behavior among its members. Its members were directly involved in the unauthorized shadow process that involved gender-based hazing, intimidation, and sexual coercion.

26.    Defendant BETA ETA CHAPTER of ALPHA PHI ALPHA FRATERNITY, INC. is the active undergraduate chapter located at SIUC which may be served through its President and Executive Officers at Fraternity and Sorority Life Student Center Room 305 - MC 4425 1255 Lincoln Drive Carbondale, Illinois 62901. Members of this chapter, individually and collectively, participated in and facilitated the abusive hazing process that harmed LaMoree' Moore.

27.    Defendant MU KAPPA LAMBDA of ALPHA PHI ALPHA FRATERNITY, INC. is believed to be the alumni chapter responsible for supervising the Beta Eta Chapter which may be served through its President and Executive Officers at Carbondale, Illinois. This graduate chapter,

through inaction and lack of oversight, allowed hazing, harassment, and retaliatory conduct to continue unchecked during and after LaMoree's initiation process.

28.    Defendant KYARA C. ROGER is a person above the age of majority a citizen domiciled in the State of Illinois and may be served at 11255 S Laramie Ave., Alsip, IL 60803 and is at all times relevant herein is a former member of AKA's Sigma Gamma Chapter, and the primary enforcer and architect of the unauthorized intake process that targeted LaMoree'. Despite efforts by LaMoree's mother to report Roger's conduct to chapter leadership, she continued to operate with impunity. She is sued individually and as an agent of AKA and its chapters

29.    Defendant TREYONNE "TREY" MASAUN RAWLS is a person above the age of majority a citizen domiciled in the State of Illinois and may be served at 247 E 150th St Harvey, IL 60426 and is at all times relevant herein is a member of Alpha Phi Alpha Fraternity who participated in hazing, coercive, and degrading conduct that contributed to LaMoree's psychological deterioration. He was directly identified in LaMoree's voice recordings and witness accounts.

30.    Defendant ALONTAE L. HOLLIDAY is a person above the age of majority a citizen domiciled in the State of Illinois and may be served at 121 Cloverleaf Rd., Matteson, IL 60443 and is at all times relevant herein is a member of Alpha Phi Alpha Fraternity and participated in the hazing process with acts of verbal abuse and intimidation. He was an active enforcer in the rogue process inflicted upon LaMoree'.

31.    Defendant CUSHE' RAE'LL BLACKMON is a person above the age of majority a citizen domiciled in the State of Illinois and may be served at 771 Shade Tree Ct, Swansea, IL 62226-7581 and is at all times relevant herein is a member of AKA and worked closely with KYARA

ROGER to implement hazing routines. She enforced the rogue intake process and intimidated participants into silence.

32.    Defendant MIA PORTER is a person above the age of majority a citizen domiciled in the State of Illinois and may be served at 823 W. Buena Ave. Apt 106, Chicago, IL 60613 and is at all times relevant herein is a member of AKA and participated in post-initiation harassment, text message intimidation, and helped maintain group compliance with the abusive practices.

33.    Defendant RODNISHA HENDERSON is a person above the age of majority a citizen domiciled in the State of Illinois and may be served at 747 E. Park St. Apt. H. Carbondale, IL 62901 and is at all times relevant herein is a member of AKA who was involved in verbal abuse, emotional manipulation, and hazing acts directed against LaMoree'.

34.    Defendant SARAH T. SMITH-WHITEHEAD HENDERSON is a person above the age of majority a citizen domiciled in the State of Illinois and may be served at 900 E. Grand Ave. Apt. 302, Carbondale, IL 62901 and is at all times relevant herein is a member of AKA identified by multiple sources as having knowledge of hazing and intimidation and having failed to intervene or report misconduct.

35.    Defendant AMBER D. HENDERSON is a person above the age of majority a citizen domiciled in the State of Illinois and may be served at 14544 Center Ave. Harvey, IL 60426 and is at all times relevant herein is a member of AKA who assisted in humiliating and emotionally degrading LaMoree and took part in organizing unauthorized hazing activities.

36.    Defendant TAYLOR MATTHEWS is a person above the age of majority a citizen domiciled in the State of Illinois and may be served at 1208 Piacenti Ln, Chicago Heights, IL 60411 and is at all times relevant herein is a member of AKA who acted in furtherance of the hostile and unauthorized intake culture that harmed LaMoree';.

37.    Defendant KYLA MCDANIEL is a person above the age of majority a citizen domiciled in the State of Illinois and may be served at 123 Akin Ave., Joliet, IL 60433 and is at all times relevant herein is a member of AKA who was present during abusive sessions and enabled the culture of silence that allowed harm to persist.

38.    Defendant CARISSA TEAL ROBINS is a person above the age of majority a citizen domiciled in the State of Texas and may be served at 6501 Excellence Way Apt. 4003, Plano, Texas 75023 and is at all times relevant herein is a member of AKA who was present during abusive sessions and enabled the culture of silence that allowed harm to persist.

39.    Defendant JARELLE RELLE SHIPP is a person above the age of majority a citizen domiciled in the State of Texas and may be served at 313 Roundrock Ln, Fort Worth, TX 76140 and is at all times relevant herein is a member of Alpha Phi Alpha Fraternity who participated in hazing, coercive, and degrading conduct that contributed to LaMoree's psychological deterioration. He was directly identified in LaMoree's voice recordings and witness accounts.

40.    Defendant STEPHANIE [LAST NAME UNKNOWN] is a member of AKA who, along with her boyfriend "KT"—a member of APA—was involved in promoting and preserving the ongoing use of the unauthorized hazing process.

41.    Defendant "KT"— is a member of Alpha Phi Alpha Fraternity and participated in the hazing process with acts of verbal abuse and intimidation. He was an active enforcer in the rogue process inflicted upon LaMoree'.

42.    Defendants JOHN DOES 1–10 and JANE DOES 1–10 are individuals affiliated with AKA, APA, SIUC, or its chapters whose identities are currently unknown but who participated in, facilitated, or concealed the acts of hazing, sexual abuse, harassment, and retaliatory conduct that contributed to LaMoree' Moore's death.

43.     Defendants JOHN DOE 11 and JANE DOE 11 are believed to be graduate advisors and/or regional officers of Alpha Kappa Alpha Sorority, Inc. with supervisory responsibility over Gamma Kappa Omega and Sigma Gamma chapters. These individuals, whose names will be substituted upon discovery, had actual or constructive knowledge of LaMoree' Moore's suffering and failed to act. As such, they are liable both individually and as agents of Alpha Kappa Alpha Sorority, Inc. for acts and omissions that contributed to LaMoree's emotional and psychological deterioration and ultimate death.

44.     At all relevant times, each Defendant Organization—including Alpha Kappa Alpha Sorority, Inc. ("AKA"), Alpha Phi Alpha Fraternity, Inc. ("APA"), and SIUC—acted through its agents, officers, members, and designated graduate chapters, including but not limited to Kyara Roger, Cushe Blackmon, Tonnie Thornton, Stephanie [LNU], Treyonne "Trey" Rawls, Alontae Holiday, and others identified herein. These individuals were acting within the actual or apparent scope of their authority. As such, the organizational Defendants are vicariously liable for the acts and omissions of their agents under the doctrines of Respondeat Superior, agency, and organizational negligence.

**FACTUAL ALLEGATIONS**

45.     LaMoree' Moore transferred to Southern Illinois University at Carbondale ("SIUC") in 2019 after completing coursework at SIU Edwardsville, with the specific intention of joining Alpha Kappa Alpha Sorority, Inc. ("AKA"). Her aspiration was to be part of what she believed was a respected sisterhood.

46.     In the spring of 2019, LaMoree' began the initiation process.  As part of that process, mandatory physical drills. These drills included wall sits, duck walks, planks, and carrying heavy bags across the room while being berated and yelled at by senior sorority members. These activities

are in direct violation of Alpha Kappa Alpha Sorority, Inc.'s National Risk Management Guidelines, which explicitly prohibit "physical abuse such as slapping, paddling, pushing, or otherwise compelling a person to perform physically strenuous activities," as stated in Section IV of the official Membership Intake Process Manual (2018 revision). LaMoree' documented her distress in a voice note recorded on or about March 11, 2019, stating: "I'm exhausted. I'm sore every day. My head hurts." Miss Simpson was shocked to learn this and remembered LaMoree' crying about being hit in the head by Defendant Roger. "They made me hold a wall sit for ten minutes while calling me weak." These unauthorized and abusive activities were conducted with the knowledge and tacit approval of supervising members, and no disciplinary action was taken.

47.     During the intake period, LaMoree' was subjected to unauthorized and abusive hazing, including physical conditioning drills in the dark, coerced silence, threats of exposure, sleep deprivation, psychological intimidation, and forced isolation from non- sorority peers. These drills were often conducted blindfolded or under strict verbal command to create confusion and induce submission. Male members of Alpha Phi Alpha Fraternity, Inc. ("APA"), including Defendants ALONTAE and "TREY," were present and active participants in this hazing, despite APA having no formal role in AKA's process. These men were identified by multiple witnesses, including YASMINE TAYLOR, as engaging in shouting commands, issuing physical challenges, and making sexually suggestive remarks during sessions. As part of that process, she was subjected to physical, psychological, and sexual abuse. Almost immediately, her family and friends observed a dramatic shift in her behavior— she became withdrawn, fearful, and emotionally distressed.

48.     On or about January 22, 2022, during her inpatient psychiatric hospitalization at SSM Health DePaul Hospital in Bridgeton, Missouri, LaMoree' Moore disclosed to medical staff that she had been drugged and raped by a man at school. According to multidisciplinary nursing notes

13

entered by RN Victoria F. Williams, LaMoree stated that "a man put something in her drink and she was raped," and further reported that a similar incident had happened again involving "a different man at school." LaMoree expressed deep frustration about her inability to get help, stating "nothing helps" and "she couldn't get in" to services. In a separate therapy session dated January 24, 2022, therapist Bridget Barni documented that LaMoree's mother, Leonetta Simpson, confirmed being aware of her daughter's disclosure of sexual assault and reported that the incident occurred around September 2020, further stating she suspected LaMoree may have been **d**rugged. These disclosures were made during and in the aftermath of LaMoree's documented psychological decline, multiple hospitalizations, and repeated expressions of suicidal ideation. The medical records corroborate prior allegations that LaMoree was subjected to sexual assault by individuals affiliated with the pledging process and form a core basis for foreseeability and institutional responsibility.

49.     Later, LaMoree' suffered her first psychiatric hospitalization. During treatment, she disclosed to medical personnel at Touchette Regional Hospital that she had been sexually assaulted by someone affiliated with the sorority. While she did not disclose the name of the perpetrator at the time, subsequent information has linked at least one APA member, known only as "Trey," to the abusive process.

50.     In the weeks following her April 6, 2019, initiation, LaMoree's demeanor shifted dramatically. She became emotionally withdrawn, increasingly fearful, and expressed elevated anxiety regarding her interactions with her "line sisters," the other pledges. After initiation, LaMoree' was subjected to what members referred to as a "post-process"—an abusive continuation of rituals involving emotional, psychological, and in some cases, sexual coercion

designed to enforce submission and maintain silence. This post-initiation harassment compounded her trauma and reinforced the culture of secrecy and abuse.

51.     According to contemporaneous text messages and voice recordings preserved by Plaintiff LEONETTA SIMPSON, LaMoree' told her on October, 2019, "I feel like I'm being watched all the time. It's like I pledged to be a prisoner, not a sister." Although the formal intake process had concluded, LaMoree' continued receiving hostile and coercive text messages from members of

52.     LaMoree' also reached out to older sorority members, including members of the graduate chapter Gamma Kappa Omega ("GKO"), who she hoped would advocate for her. Instead, GKO dismissed her concerns and, according to multiple witness accounts, referred to her as "unstable" or "crazy." This is consistent with a broader pattern within GKO of failing to protect younger members and downplaying credible reports of hazing and abuse.

53.     Evidence from LaMoree's phone—including voice recordings, social media videos, and journals—show that she suffered in silence while continuing to be harassed. In one recording, made five days before she took her life, she can be seen placing a belt around her neck while sobbing, asking, "What happened to me?" documenting and connecting her emotional breakdown to the trauma she experienced while she interacted AKA and APA.

54.     LaMoree's roommate, Keke, and other friends such as Korissa and Yasmin Taylor, have confirmed her descriptions of fear, paranoia, and emotional instability brought on by her mistreatment. Witnesses described Kyara Roger as controlling, manipulative, and capable of "snapping her fingers" to elicit blind obedience from other members. Several individuals— including Amber, Tonie, Stephanie, and Mia— participated in or enabled this ongoing abuse.

55.     The hazing and psychological torment extended beyond LaMoree's initiation and continued after her return to Missouri. She was continually targeted, belittled, and emotionally

isolated even as a full-fledged member of AKA. The continued abuse suggests a systematic pattern of post-initiation hazing and retaliatory ostracism intended to break her down psychologically.

56.     The process LaMoree' was subjected to was not stopped by AKA's national leadership and was allowed to develop due to a culture of silence and neglect. Male members of Alpha Phi Alpha, including "Trey" and "KT" (boyfriend of Defendant Stephanie), were involved in this intake process, which included acts of coercion, emotional manipulation, and—according to multiple sources—sexual assault.

57.     Several former SIUC students have come forward or been identified—such as Jaela, Daziya, and Aaryana—who either transferred out of SIUC or severed ties with AKA after enduring similar bullying, ostracism, and abuse. Some described fearing for their safety or mental wellbeing if they spoke out.

58.     Kyara Roger had a known history of misconduct. At one point, Gamma Kappa Omega considered suspending her membership due to persistent complaints, but the process was abandoned after the onset of the COVID-19 pandemic and her subsequent graduation. Her unchecked sadism became the nucleus of the rogue hazing culture.

59.     Ms. Simpson has since recovered journals where LaMoree' denounced AKA, warning others not to join and detailing her emotional deterioration. These writings, while fragmented due to her psychiatric condition, are compelling and consistent with her hospitalizations and reported symptoms.

60.     The toxic environment created by AKA and APA members, enabled by GKO, and ignored by national leadership, led LaMoree' to believe she had no way out. Despite her attempts to escape, the ostracism, psychological manipulation, and institutional failure left her emotionally shattered.

61.    From January 2020 through 2022, Defendants—including individual actors and chapter leadership—were repeatedly notified that LaMoree' Moore was experiencing psychotic breaks, expressing suicidal ideation, and had disclosed both her trauma and her intent to die to family members and providers. These communications made LaMoree's death entirely foreseeable and triggered a duty to intervene that was utterly ignored.

62.    On or about January 30, 2020—approximately ten months after her initiation into Alpha Kappa Alpha Sorority, Inc.—LaMoree' Moore attempted to confront fellow member Kyara Roger about what she alleged to be a drugging and sexual assault that had occurred during or shortly after her pledging process. Moore, who had grown increasingly distressed over unanswered questions and fragmented memories of the alleged sexual assault, attempted multiple times to speak with Roger. After receiving no response, LaMoree' chose to return the sorority gifts Roger gave her as part of her pledge process. In response, Roger reported Moore to the SIU Police Department, resulting in a police report being filed against LaMoree'. In her statements to police, Roger claimed she felt "threatened" by LaMoree's texts and actions, although no physical confrontation occurred. LaMoree' was ultimately cooperative with law enforcement and confirmed she had no intention of harming Roger. This incident represents a turning point in LaMoree's isolation, reinforcing the pattern of institutional neglect and retaliation she experienced after seeking answers about her own trauma.

63.    LaMoree' withdrew from SIUC in October 2020, a month after she was sexually assaulted twice, and returned home to Florissant, Missouri. But the abuse and harassment from Defendants continued. Defendants sent text messages, emails, and social media communications to LaMoree' in Missouri.

17

64.    On November 17, 2022, LaMoree' was found deceased in the basement of her mother's home in Missouri, having died by suicide using a robe belt. Five days earlier, she had recorded a video on her phone rehearsing the act with the same belt, visibly broken and apologizing for failing to withstand Defendants' torment.

65.    Plaintiffs now possess substantial digital and testimonial evidence—including hospital records, HIPAA-authorized mental health documentation, text messages, videos, and firsthand witness accounts—establishing that the abuse LaMoree' suffered was part of a coordinated, multiyear scheme involving members of both AKA and APA, that continued after LaMoree' returned to her home in Missouri.

66.    At all relevant times, Defendants knew or should have known that LaMoree' Moore was in grave danger. Their failure to act, combined with a culture of organizational betrayal and secrecy, directly contributed to her suffering and untimely death.

67.    The evidence makes clear that LaMoree's death was not the result of a single incident or a temporary mental health condition. Instead, it was the consequence of a sustained, organized campaign of physical, psychological, and sexual abuse, coercion, and targeted harassment by multiple parties across both AKA and APA—abuse that continued from February 2019, through her return to Missouri, through November 2022, long after her formal initiation.

68.    At all relevant times, the national organization, the supervising graduate chapter, and the local undergraduate chapter were on actual and constructive notice of the abuse. Their failure to act—despite direct emails, hospital records, text messages, social media reports, and whistleblower complaints—constitutes deliberate indifference and gross negligence. This coordinated neglect directly contributed to the wrongful death of LaMoree' Moore.

69.    From as early as October 11, 2021, and continuing through October 2023, Plaintiff Leonetta Simpson, the mother of LaMoree' Moore, engaged in multiple written and verbal communications with national and regional officers of Alpha Kappa Alpha Sorority, Inc., including Pamela Watkins, Sonya Bowen, and Nicole Barrett, placing the organization on actual and direct notice of the severe psychological trauma LaMoree was experiencing as a result of her participation in the Membership Intake Process (MIP) and post-initiation activities at Southern Illinois University Carbondale (SIUC).

70.    In her initial outreach, Ms. Simpson sent an email to Pamela Watkins on October 11, 2021, in which she detailed her daughter's mental health deterioration—including diagnoses of psychosis, multiple hospitalizations, and emotional withdrawal.

71.    She further explained that during a psychotic break, LaMoree' had expressed reluctance to continue her association with AKA given the poor treatment she experienced and pleaded with AKA leadership to reintegrate her daughter into the organization, believing it would help restore her dignity and support her emotional recovery.

72.    On April 13, 2022, Ms. Simpson sent another message to Central Regional Director Sonya Bowen titled "Membership surrounding mental health," in which she requested a phone call due to the sensitivity of the subject matter.

73.    Bowen responded the same day, confirming they were attempting to reach Ms. Simpson by phone from area code (859). Ms. Simpson acknowledged this and later confirmed that the phone call took place.

74.    During that April 13, 2022, phone call, Ms. Simpson explicitly described LaMoree's psychiatric collapse, including multiple hospitalizations, suicidal ideation.  Ms. Simpson emphasized that this trauma stemmed directly from LaMoree's involvement in the organization

and its culture of hazing, coercion, secrecy, and institutional silence. Ms. Simpson did not know that LaMoree had been sexually assaulted at this time of the phone call.

75.    Following this phone conversation, Ms. Simpson later stated she had been "blown off" by those in power, indicating her concerns were met with dismissiveness or silence, and that no meaningful response or follow-up was provided by the organization.

76.    On November 30, 2022, Ms. Simpson sent a follow-up email to Pamela Watkins, forwarding her original October 2021 message and writing, "This is what I sent you last year. Here we are now," confirming that no action had been taken despite her prior warnings.

77.    After LaMoree's death by suicide on November 17, 2022, Ms. Simpson sent additional follow-up emails to Nicole Barrett on December 12, 2022, and again in October 2023, in which she explained that her daughter's emotional and psychological deterioration were due to her experience in AKA and the organization's failure to intervene. These messages were sent as part of Ms. Simpson's ongoing effort to understand what happened to her daughter and to seek accountability.

78.    These time-stamped, specific, and repeated communications, sent to high- ranking officers of the national and regional structure of Alpha Kappa Alpha Sorority, Inc., constitute actual and constructive notice of foreseeable harm and abuse.

79.    Despite these grave and ongoing warnings, no internal investigation was initiated, no mental health support was provided, and no protective intervention occurred. The organization's inaction allowed the trauma, harassment, and isolation to persist unchecked, culminating in LaMoree's death.

80.     In addition to contacting officers of Alpha Kappa Alpha Sorority, Inc., Plaintiff Leonetta Simpson also reached out directly to representatives of Alpha Phi Alpha Fraternity, Inc., including T. Byerson, on multiple occasions between 2022 and 2023.

81.     These communications were intended to alert fraternity leadership to the role that individual members of Alpha Phi Alpha, particularly those affiliated with Beta Eta Chapter at SIUC, played in the psychological and sexual abuse, coercion, and trauma inflicted upon LaMoree' Moore by members of the fraternity.

82.     Ms. Simpson provided information that LaMoree' had been harassed and intimidated by APA-affiliated individuals during and after her intake into Alpha Kappa Alpha, and that these actions contributed directly to LaMoree's mental collapse, multiple hospitalizations, and suicide risk.

83.     Nicole Barrett initially replied with the dismissive statement, "Do not know what this is about," and no meaningful follow-up occurred. Despite subsequent emails from Ms. Simpson reiterating her concerns, her messages were ignored, and no investigation or offer of support was initiated by Alpha Kappa Alpha Sorority, Inc.

84.     These communications constitute actual and constructive notice to APA that their members were alleged to have been involved in harmful conduct toward LaMoree' Moore and that urgent intervention was warranted.

85.     APA's failure to acknowledge, investigate, or act on Ms. Simpson's repeated outreach represents further evidence of institutional indifference, ratification of abuse, and gross negligence, and supports Plaintiffs' claim for punitive damages.

## CAUSES OF ACTION

86.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

87.     At all relevant times, Defendant Alpha Kappa Alpha Sorority, Inc. ("AKA") exercised centralized control over its undergraduate and graduate chapters, including Sigma Gamma and Gamma Kappa Omega. No Membership Intake Process (MIP), initiation activity, or public sorority function could be conducted without the express authorization and continuing oversight of AKA's national leadership and designated Regional Director. Gamma Kappa Omega operated as an agent of the national organization in supervising the MIP and post-initiation conduct at Southern Illinois University Carbondale. Accordingly, all acts and omissions by Gamma Kappa Omega and Sigma Gamma are legally attributable to AKA under principles of agency and respondeat superior.

88.     Similarly, Defendant Alpha Phi Alpha Fraternity, Inc. ("APA") maintained operational control over its collegiate and graduate chapters, including Beta Eta Chapter and its supervising graduate body. APA promulgated risk management and anti-hazing policies, controlled membership eligibility, and bore responsibility for ensuring compliance with national standards. The misconduct of Beta Eta Chapter and its members—including participation in the unauthorized "post-process" and hazing rituals—occurred under APA's delegated authority and with the knowledge or reckless disregard of its national officers. As such, APA is vicariously liable for the conduct of its subordinate chapters and members.

## COUNT I – WRONGFUL DEATH
### (§ 537.080 et seq., RSMo)

89.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

90.     This claim is brought pursuant to Missouri's wrongful death statute, § 537.080 et seq., RSMo, by the Estate of LaMoree' Moore and her surviving parents, LEONETTA SIMPSON and ANDRE MOORE.

91.    As described above, Defendants engaged in a sustained and coordinated pattern of sexual assault, hazing, harassment, emotional abuse, and intimidation that caused LaMoree' Moore to suffer severe psychological trauma and ultimately resulted in her death by suicide in Florissant, Missouri, on November 17, 2022.

92.    Defendants ALPHA KAPPA ALPHA SORORITY, INC. ("AKA"), GAMMA KAPPA OMEGA CHAPTER, and SIGMA GAMMA CHAPTER acted in concert and under an established hierarchy in which the supervising graduate chapter operated as an agent of the national organization. The Membership Intake Process (MIP) could not proceed without express authorization from the National Sorority and its designated Regional Director. Thus, any failures by Gamma Kappa Omega and Sigma Gamma were, and are, attributable to AKA.

93.    Defendants ALPHA PHI ALPHA FRATERNITY, INC. ("APA"), BETA ETA CHAPTER, MU KAPPA LAMBDA CHAPTER, and affiliated individuals and agents likewise engaged in joint conduct with AKA members, contributing to LaMoree's trauma. These actions constituted an unofficial but coordinated enterprise involving both organizations and their members.

94.    Between 2020 and 2022, national officers of AKA, including Pamela Watkins and Central Regional Director Sonya L. Bowen, received specific complaints identifying LaMoree' by name and describing her psychological decline and suicidal ideation. Despite this actual and constructive knowledge, no action was taken to protect LaMoree, investigate the claims, or intervene—demonstrating deliberate indifference and making her death foreseeable.

95.    The Defendants had actual and/or constructive knowledge of the harassment and abuse LaMoree endured between approximately February 2019 and November 2022. Despite repeated and documented complaints—through emails, messages, hospitalizations, and oral reports from

LaMoree and her mother, Leonetta Simpson—Defendants failed to intervene or take corrective action.

96.    The emotional deterioration LaMoree experienced, including multiple hospitalizations for suicidal ideation and psychotic episodes, was well- documented and known to Defendants. Nonetheless, they acted with gross negligence and reckless disregard for her physical and psychological safety.

97.    AKA, by and through its agents, expressly authorized and supervised the Membership Intake Process (MIP) that occurred at SIUC. No AKA chapter may initiate new members or engage in public-facing activities without approval and oversight from the National Sorority and its designated Regional Director. Gamma Kappa Omega acted as the supervising graduate chapter and was, at all relevant times, the authorized agent of AKA.

98.    At all relevant times, Defendant AKA acted through its agents, including but not limited to Kyara Roger, Cushe Blackmon, Stephanie [LNU], and other named members, who were acting within the actual or apparent scope of their authority. As such, AKA is vicariously liable under the doctrine of respondeat superior and agency law.

99.    The conduct of both Gamma Kappa Omega and Sigma Gamma Chapters is legally attributable to the national organization, Alpha Kappa Alpha Sorority, Inc., under agency principles and the centralized control structure maintained by AKA.

100.    As a direct and proximate result of the Defendants' acts and omissions— committed individually and collectively under the umbrella of authorized intake and supervisory structures— LaMoree' Moore suffered fatal injuries. Her death caused pecuniary loss, loss of companionship, emotional trauma, and other compensable damages to her next of kin.

## COUNT II – SURVIVAL ACTION MISSOURI LAW
### (§ 537.020, RSMo)

101.   Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

102.   Prior to her death, LaMoree Moore experienced prolonged and escalating trauma, humiliation, psychosis, suicidal ideation, and emotional suffering as a result of hazing, gender-based harassment, stalking, retaliation, and psychological coercion carried out by members and agents of Alpha Kappa Alpha Sorority, Inc. ("AKA"), Alpha Phi Alpha Fraternity, Inc. ("APA"), and their respective chapters.

103.   These injuries were extensively documented through medical and psychiatric records from Touchette Regional Hospital, Memorial Hospital of Carbondale, SSM Health DePaul, and BJC Healthcare. Additional evidence includes real-time voice recordings, text messages, social media content, suicide rehearsal footage, and handwritten journal entries—all created by LaMoree and recovered by her family after her death.

104.   LaMoree's psychological deterioration was repeatedly reported to national and regional officers of AKA and APA, including Pamela Watkins, Sonya Bowen, Nicole Barrett, and T. Byerson, yet no remedial or protective action was taken. Her emotional distress was compounded by continued harassment and institutional abandonment after she denounced her membership.

105.   In April 2022, LaMoree's mother directly informed national leadership of the sorority that LaMoree had been sexually assaulted by a member or affiliate of the organization. This disclosure—along with LaMoree's ongoing mental health crises—was ignored, worsening her condition.

106.   These facts demonstrate a prolonged and foreseeable pattern of institutional neglect, psychological abuse, and retaliation. Defendants' inaction was a substantial factor in prolonging LaMoree's suffering and ultimately contributed to her death.

107.    Pursuant to Mo. Rev. Stat. § 537.020, the Estate of LaMoree Moore is entitled to recover for the physical pain, mental anguish, humiliation, and emotional suffering that LaMoree experienced between 2019 and the date of her death on November 17, 2022.

108.    These damages include compensation for hospitalizations, psychiatric treatments, diminished quality of life, and the conscious awareness of her deteriorating state caused by the sustained abuse and abandonment she endured.

109.    Defendants' conduct rises to the level of willful, wanton, and malicious indifference and warrants the imposition of punitive damages in addition to all compensatory damages allowed by law.

## COUNT III – NEGLIGENT SUPERVISION AND RETENTION
(Missouri Common Law Negligence)

110.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

111.    Defendants Alpha Kappa Alpha Sorority, Inc. ("AKA"), Alpha Phi Alpha Fraternity, Inc. ("APA"), Gamma Kappa Omega Chapter ("GKO"), Sigma Gamma Chapter, Beta Eta Chapter, Mu Kappa Lambda the APA graduate chapter, each owed LaMoree' Moore a duty to properly supervise their agents, representatives, and members and to respond meaningfully to credible allegations of hazing, sexual misconduct, emotional abuse, and psychological coercion.

112.    These Defendants had actual or constructive notice of ongoing abuse and psychological deterioration suffered by LaMoree Moore, including multiple complaints submitted by LaMoree, her mother Leonetta Simpson, and other whistleblowers. Such complaints included detailed emails to AKA National Officer Nicole Barrett, Regional Director Sonya Bowen, Pamela Watkins, and APA representative T. Byerson, outlining persistent hazing, intimidation, sexual violence, and mental health collapse.

113.    Despite this notice, Defendants failed to investigate, discipline, or remove individuals credibly accused of misconduct, including Kyara Roger, Cushe Blackmon, Stephanie [LNU], and others who led or participated in the rogue intake process and post-initiation harassment. AKA and APA knowingly allowed these individuals to retain positions of influence and control.

114.    Alpha Kappa Alpha Sorority, Inc., by and through its authorized agent Gamma Kappa Omega Chapter, negligently supervised and retained Sigma Gamma Chapter members despite mounting evidence of unlawful hazing practices, psychiatric distress, and escalating harm to LaMoree Moore. Gamma Kappa Omega had direct oversight responsibility over Sigma Gamma and acted within the scope of authority expressly delegated by AKA National and its Regional Director.

115.    Under principles of agency and Respondeat Superior, AKA is legally responsible for the acts and omissions of its subordinate chapters and agents, particularly when the Membership Intake Process (MIP) requires express national approval and graduate chapter supervision. Similarly, APA is responsible for the conduct of Beta Eta Chapter and Mu Kappa Lambda Chapter that oversaw its operations.

116.    Defendants' collective inaction in the face of escalating warnings—including repeated disclosures by Leonetta Simpson between October 2021 and October 2023—constituted gross negligence and willful indifference.

117.    The failure to supervise and remove dangerous individuals directly contributed to LaMoree' Moore's emotional collapse, repeated hospitalizations, and eventual death by suicide.

118.    As a direct and proximate result of Defendants' negligent supervision and retention, Plaintiffs have suffered significant and ongoing damages, including the wrongful death of

LaMoree Moore, loss of companionship, emotional trauma, and other compensable losses recoverable under Missouri law.

## COUNT IV – HAZING
### (§ 578.365, RSMo)

119.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

120.    Defendant Alpha Kappa Alpha Sorority, Inc. ("AKA") maintained control over its chapters through national policies and required authorization for all intake and initiation activities. Gamma Kappa Omega and Sigma Gamma Chapters acted as agents of AKA, and their conduct is therefore attributable to the national organization under agency principles.

121.    Likewise, Alpha Phi Alpha Fraternity, Inc. ("APA") exercised supervisory authority over its Beta Eta Chapter and its graduate oversight body. The actions of APA-affiliated individuals occurred within the scope of APA's delegated authority and are imputed to the national fraternity under established doctrines of control and vicarious liability.

122.    Under Missouri law, § 578.365, RSMo defines hazing as any willful act, occurring on or off school grounds, directed against a student or prospective member of an organization, that recklessly endangers the mental or physical health or safety of that person for purposes of initiation or continued membership. The statute applies regardless of whether the hazing was sanctioned or approved by any organization or school.

123.    At all relevant times, Defendants—including but not limited to Alpha Kappa Alpha Sorority, Inc., Gamma Kappa Omega Chapter, Sigma Gamma Chapter, Alpha Phi Alpha Fraternity, Inc., Beta Eta Chapter, and Mu Kappa Lambda —individually and in concert subjected LaMoree' Moore to repeated acts of hazing in violation of § 578.365, RSMo.

124.    These acts included forced physical exertion, psychological abuse, emotional degradation, isolation, and coerced silence, all without consent and beyond the bounds of any authorized educational or organizational activity.

125.    The conduct by these defendants was continuous and extended beyond initiation after her withdrawal from school and return to Florissant, Missouri, contributing directly to LaMoree' Moore's deterioration and death. The conduct was not reported or remedied by any supervising entity despite multiple opportunities and documented notice.

126.    Defendants are liable for all damages arising under Missouri hazing statutes, as well as common law principles governing negligence and intentional torts.

### COUNT V – NEGLIGENT ENTRUSTMENT AS TO DEFENDANT ALPHA KAPPA ALPHA SORORITY, INC.

127.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

128.    Defendant Alpha Kappa Alpha Sorority, Inc. ("AKA"), by and through its national officers, regional directors, agents, and designated graduate chapters, negligently entrusted its supervisory authority to Gamma Kappa Omega Chapter and Sigma Gamma Chapter for purposes of conducting the Membership Intake Process ("MIP") and supervising post-initiation activities at Southern Illinois University Carbondale ("SIUC") between February 2019 and April 2019.

129.    Gamma Kappa Omega and Sigma Gamma Chapters operated under the formal authority, approval, and oversight of AKA National. No undergraduate chapter may initiate members or conduct MIP-related activities without express authorization and close supervision from the national sorority and its designated regional officers.

130.    Gamma Kappa Omega, as the assigned graduate chapter, had direct supervisory control over the Sigma Gamma Chapter and was tasked with ensuring compliance with national hazing

and intake policies. In performing this function, Gamma Kappa Omega acted as an authorized agent and mandatory of AKA National.

131.    Defendant AKA had actual and constructive knowledge of past hazing incidents, psychological abuse, and disciplinary concerns involving Sigma Gamma, Gamma Kappa Omega, and other chapters within its national network. These concerns were documented in internal records and were widely known to graduate advisors, regional officers, and national representatives.

132.    Despite this knowledge, AKA failed to take reasonable precautions to limit or revoke the authority of these chapters. It did not initiate enhanced monitoring, impose sanctions, or re-evaluate their delegated roles—despite multiple red flags and complaints.

133.    AKA's decision to permit these chapters to continue operating without meaningful supervision or restriction constituted negligent entrustment. The unchecked authority enabled members of Sigma Gamma and Gamma Kappa Omega to subject LaMoree Moore to a pattern of hazing, emotional abuse, coercion, and social isolation that persisted well beyond initiation.

134.    The failure to revoke or curtail the authority of chapters with known issues created a foreseeable and unreasonable risk of harm. This negligent entrustment was a substantial factor in causing LaMoree Moore's psychological breakdown, repeated hospitalizations, and eventual suicide on November 17, 2022.

135.    As a direct and proximate result of AKA's negligent delegation and supervision, LaMoree' Moore suffered fatal injuries and Plaintiffs have sustained damages including wrongful death, emotional distress, and economic loss.

136.    Defendant Alpha Kappa Alpha Sorority, Inc. is therefore jointly and severally liable under Missouri common law for negligent entrustment and all resulting harms.

## COUNT VI – NEGLIGENT ENTRUSTMENT AS TO DEFENDANT ALPHA PHI ALPHA FRATERNITY, INC.

137.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

138.    Defendant Alpha Phi Alpha Fraternity, Inc. ("APA") negligently entrusted its local undergraduate Beta Eta Chapter and the unnamed graduate chapter with authority to operate on or near the campus of Southern Illinois University Carbondale ("SIUC"), knowing or having reason to know that members of these chapters had previously engaged in gender-based hazing, sexual assault, coercion and unauthorized involvement in sorority intake rituals.

139.    Defendant APA had actual or constructive knowledge of prior incidents involving psychological abuse, retaliatory conduct, and gender-targeted harassment perpetrated by its members against LaMoree' Moore and others.

140.    Despite this knowledge, APA failed to monitor, restrict, or intervene in the activities of known actors—including Treyonne "Trey" Rawls, Alontae L. Holiday, Jarelle Relle Shipp and "KT"—who played direct roles in the abuse of LaMoree' Moore.

141.    These individuals were permitted to operate with impunity and without oversight, despite reports from witnesses, hospitalizations of the victim, and communications from her family.

142.    As a direct and proximate result of APA's negligent delegation and lack of supervision, LaMoree' Moore experienced severe emotional and psychological trauma, repeated psychiatric hospitalization, and ultimately died by suicide.

143.    Defendant Alpha Phi Alpha Fraternity, Inc. is therefore jointly and severally liable under Missouri common law for negligent entrustment and all resulting injuries and damages.

## COUNT VII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED)
### (Pursuant to Missouri Common Law and § 578.365, RSMo)

144.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

145.    Defendant Alpha Kappa Alpha Sorority, Inc. ("AKA") maintained control over its chapters through national policies and required authorization for all intake and initiation activities. Gamma Kappa Omega and Sigma Gamma Chapters acted as agents of AKA, and their conduct is therefore attributable to the national organization under agency principles.

146.    Likewise, Alpha Phi Alpha Fraternity, Inc. ("APA") exercised supervisory authority over its Beta Eta Chapter and its graduate oversight body. The actions of APA- affiliated individuals occurred within the scope of APA's delegated authority and are imputed to the national fraternity under established doctrines of control and vicarious liability.

147.    Between February 18, 2019, and November 17, 2022, Defendants—including Alpha Kappa Alpha Sorority, Inc. ("AKA"), its agents in the Gamma Kappa Omega and Sigma Gamma Chapters, and members of Alpha Phi Alpha Fraternity, Inc. ("APA")— engaged in a continuous and escalating pattern of psychological torment, coercion, and intimidation directed at LaMoree' Moore. This conduct was extreme, outrageous, and unconscionable by any standard of decency in a civilized society.

148.    The abuse began during the Membership Intake Process (MIP) at Southern Illinois University Carbondale ("SIUC"), which was authorized by AKA National and implemented under the supervision of the Gamma Kappa Omega Chapter. The process was enforced by individual members of the Sigma Gamma Chapter, all of whom acted under the express or implied authority of AKA National and its Regional Director.

149.    Individual perpetrators included Kyara Roger, Cushe Blackmon, Amber Henderson, Stephanie [last name unknown], Mia Porter, Rodnisha Henderson, Sarah Smith-Whitehead, Taylor

Matthews, Carissa Teal Robins, and Kyla McDaniel, among others. Male members of APA—including Treyonne "Trey" Masaun Rawls, Alontae L. Holiday, Jarelle Relle Shipp and "KT" (believed to be Stephanie's boyfriend)—also participated in psychological abuse and hazing, despite having no official role in the AKA intake process.

150.    The misconduct included coerced physical hazing, public and private humiliation, forced isolation, surveillance, sexual intimidation, retaliatory threats, cyberbullying, and verbal abuse. After LaMoree's formal initiation on April 6, 2019, the abuse intensified in what members referred to as a "post-process"—a ritualized continuation of subjugation and   discipline meant to silence dissent and enforce obedience.

151.    These statements and events reflect the hostile, retaliatory climate that surrounded LaMoree' even after initiation, even after her withdrawal from SIUC and return to Florissant, Missouri.

152.    From 2020 through 2022, Defendants continued harassing LaMoree' while she was living at home in St. Louis, Missouri. LaMoree received repeated coercive and threatening messages from Kyara Roger and others—including texts referencing her disclosures, warning her to stay silent, and implying retaliation if she spoke out.

153.    On April 7, 2021, LaMoree' mailed her mother a handwritten list of funeral instructions, as a result of the ongoing and continuous abuse. On November 12, 2022, she recorded a suicide rehearsal video, explicitly linking her emotional state to the trauma she endured. On November 17, 2022, she was found hanging in the basement of her mother's home in St. Louis.

160.    Medical documentation from Touchette Regional Hospital, Memorial Hospital of Carbondale, SSM Health DePaul, and BJC Healthcare (from 2020 through 2022) confirms

diagnoses of psychosis, paranoia, suicidal ideation, and emotional collapse—all of which were directly attributed to the relentless psychological abuse she suffered from Defendants.

161.   Alpha Kappa Alpha Sorority, Inc. authorized the MIP and negligently failed to supervise, restrict, or discipline members during or after the process. Its designated agents—Gamma Kappa Omega and Sigma Gamma—acted within the scope of their delegated authority. AKA's failure to regulate post-initiation conduct allowed hostile conditions to persist unchecked and directly contributed to LaMoree's death. Accordingly, the conduct of subordinate chapters and their members is legally attributable to AKA National under agency principles.

162.   At all relevant times, Defendants—including individuals and chapters—acted as agents and representatives of their respective organizations. The actions were committed within the scope of their delegated responsibilities, and the organizations are vicariously liable under the doctrine of Respondeat Superior and agency law.

163.   Defendants' conduct was intended to, and did, cause severe and lasting emotional harm. It was malicious, reckless, and done with conscious disregard for LaMoree's life and safety—despite repeated warnings and pleas for intervention from Plaintiff Leonetta Simpson and others who observed LaMoree's mental decline.

164.   Pursuant to Missouri's common law of intentional torts, the continuing tort doctrine, and Missouri's anti-hazing statute (§ 578.365, RSMo)—which codifies a strong public policy against conduct endangering the mental or physical health of organizational members—Defendants are jointly and severally liable for the intentional infliction of emotional distress that directly contributed to the wrongful death of LaMoree' Moore.

## COUNT VIII – CIVIL CONSPIRACY

165.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

166.    Defendants—including Alpha Kappa Alpha Sorority, Inc. ("AKA"), Alpha Phi Alpha Fraternity, Inc. ("APA"), Gamma Kappa Omega Chapter, Sigma Gamma Chapter, Beta Eta Chapter, the unnamed APA graduate chapter, and individual members—owed LaMoree' Moore a duty to refrain from engaging in conduct that would foreseeably cause her serious emotional harm.

167.    Despite that duty, these Defendants knowingly agreed and acted in concert to perpetuate a hostile environment through sexual assault, unlawful hazing, emotional coercion, retaliatory threats, and concealment of wrongdoing. The coordinated efforts to silence LaMoree' Moore and discourage reporting of abuse were done for the purpose of protecting the reputations of their organizations while continuing abusive practices unchecked.

168.    The agreement among Defendants was reflected in consistent, overlapping behavior—including orchestrated exclusion, forced obedience, psychological torment, cyberbullying, post-initiation "discipline," and suppression of complaints both internally and externally.

169.    Specific overt acts in furtherance of this conspiracy included group text messages sent by Tonnie Thornton and Stephanie threatening LaMoree' to remain compliant, retaliatory actions orchestrated by Kyara Roger and others, the submission of a false police report to discredit LaMoree, and collective failure to report or intervene despite receiving direct written and verbal notice from Plaintiff Leonetta Simpson.

170.    Missouri's anti-hazing statute, § 578.365, RSMo, codifies a public policy against abuse and neglect of student members. This policy applies to all Defendants whose coordinated actions and omissions placed LaMoree' Moore in foreseeable psychological danger while she was a Missouri resident.

171.    Defendants' collective and coordinated conduct was malicious, intentional, and exhibited willful disregard for LaMoree's health and safety. Their concerted silence and retaliation against a vulnerable young woman represent the very definition of civil conspiracy under Missouri law.

172.    As a direct and proximate result of this unlawful conspiracy, LaMoree' Moore suffered sustained psychological trauma, multiple psychiatric hospitalizations, and ultimately death by suicide.

173.    Defendants are jointly and severally liable under Missouri law for all injuries and damages arising from their participation in this conspiracy, including compensatory and punitive damages.

### COUNT IX – CIVIL CONSPIRACY – JOINT ENTERPRISE LIABILITY
(Missouri Common Law – Joint Enterprise Theory)

174.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

175.    At all relevant times, Defendants Alpha Kappa Alpha Sorority, Inc. ("AKA"), Alpha Phi Alpha Fraternity, Inc. ("APA"), Gamma Kappa Omega Chapter, Sigma Gamma Chapter, Beta Eta Chapter, and Mu Kappa Lambda Chapter, as well as individual Defendants named herein, operated as part of a joint enterprise to maintain and enforce a rogue Membership Intake Process ("MIP") and post-initiation "disciplinary" culture through hazing, emotional coercion, and retaliatory conduct.

176.    This joint enterprise was characterized by a common purpose—maintaining secrecy, loyalty, and control within the chapters—pursued through unlawful means including psychological manipulation, forced isolation, verbal and physical intimidation, and concealment of internal misconduct.

177.    The participants in the enterprise had mutual knowledge of and a shared interest in the objective of protecting their organizations' reputations while suppressing dissent and enforcing compliance among initiates.

178.    Members of AKA and APA collaborated in hazing sessions, retaliatory campaigns, and silencing efforts, both on and off campus, and through digital platforms, text messaging, and coordinated in-person actions.

179.    Each participant had the ability to control, encourage, or withdraw from the enterprise but chose instead to actively further its purpose, thereby making each party jointly and severally liable for the wrongful acts committed in furtherance of the conspiracy.

180.    As a direct and proximate result of the acts committed by this joint enterprise, LaMoree' Moore suffered sustained psychological harm, hospitalization, and ultimately death.

181.    Plaintiffs are entitled to recover compensatory and punitive damages under Missouri law for injuries caused by the joint enterprise and its members.

## COUNT X – CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS
### (42 U.S.C. § 1985(3))

182.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

183.    Defendants, including named individuals and unknown members of Alpha Kappa Alpha Sorority, Inc., Alpha Phi Alpha Fraternity, Inc., the Sigma Gamma Chapter, Beta Eta Chapter, Gamma Kappa Omega Chapter, and the supervising graduate chapter of Alpha Phi Alpha, knowingly and willfully acted in concert— both under the color of organizational authority and in their private capacities—to deprive LaMoree' Moore of her federally protected civil rights. These rights include, but are not limited to, bodily integrity, equal protection under the law, and freedom from gender-based discrimination and retaliation.

184.    The conspiracy was motivated by invidious class-based discriminatory animus, namely LaMoree's gender and her status as a vulnerable member resisting continued hazing and sexual coercion. Defendants coordinated their efforts to ostracize, intimidate, and retaliate against

LaMoree' for perceived noncompliance with unlawful group norms and for seeking help from authorities and family.

185.    Acts taken in furtherance of this conspiracy included psychological torment, gender-based hazing, social isolation, retaliatory messaging, coordinated concealment of misconduct, and institutional non-response to repeated pleas for intervention. These actions deprived LaMoree' of educational benefits and equal participation in campus life while exacerbating her trauma and mental decline.

186.    Defendants' concerted conduct constitutes a violation of 42 U.S.C. § 1985(3), which prohibits conspiracies to deprive individuals or classes of persons of equal protection of the laws and equal privileges and immunities under the laws.

187.    As a direct and proximate result of this unlawful conspiracy, LaMoree' Moore suffered irreparable emotional harm, psychiatric hospitalization, educational disruption, and ultimately death by suicide.

188.    Plaintiffs are entitled to recover all compensatory, punitive, and equitable relief permitted by law under 42 U.S.C. § 1985(3), including attorney's fees and costs.

## COUNT XI – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (NIED)

189.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

190.    From February 18, 2019, through November 17, 2022, Defendants—including Alpha Kappa Alpha Sorority, Inc. ("AKA"), Gamma Kappa Omega Chapter, Sigma Gamma Chapter, Alpha Phi Alpha Fraternity, Inc. ("APA"), and Beta Eta Chapter, Mu Kappa Lambda Chapter— engaged in a sustained course of conduct that foreseeably and repeatedly caused LaMoree' Moore severe emotional distress, psychiatric trauma, and ultimately, death by suicide.

191.    The emotional harm began during the Alpha Kappa Alpha Membership Intake Process and escalated significantly after initiation in what members described as a "post- process"—a continuation of coercive rituals and retaliatory control. These included unauthorized hazing, coerced silence, sexual intimidation, social isolation, cyberbullying, and persistent psychological manipulation that continued well into 2022 while LaMoree' resided in Florissant, Missouri.

192.    Individual actors involved in this abuse included Kyara Roger, Cushe Blackmon, Amber Henderson, Stephanie [last name unknown], Mia Porter, Rodnisha Henderson, Sarah Smith-Whitehead, Taylor Matthews, Carissa Teal Robins, and Kyla McDaniel, among others. APA-affiliated individuals—including Treyonne "Trey" Masaun Rawls, Alontae Holiday, Jarelle Relle Shipp and "KT" (boyfriend of Defendant Stephanie)—also participated in acts of emotional degradation and intimidation despite holding no official role in the AKA intake process.

193.    These acts were perpetrated both in-person and through digital communication, and included threats, surveillance, and exclusion. They caused ongoing psychological harm over a period of nearly four years and extended across multiple jurisdictions.

194.    From at least early 2020, Defendant organizations—including AKA National, its designated Regional Director(s), Gamma Kappa Omega, APA leadership, and SIUC officials—had actual and constructive knowledge of LaMoree Moore's emotional deterioration. Plaintiff Leonetta Simpson, LaMoree's mother, provided repeated notice through emails, text messages, and documents sent to Nicole Barrett (AKA), T. Byerson (APA), and administrative staff at SIUC.

195.    Medical records from Touchette Regional Hospital, Memorial Hospital of Carbondale, SSM Health DePaul, and BJC Healthcare between 2020 and 2022 confirm multiple hospitalizations for psychosis, paranoia, and suicidal ideation. These hospitalizations were directly linked by treating physicians to trauma caused by LaMoree's sorority experience.

196.    Despite this record of escalating distress and clear warning signs, Defendants failed to intervene, supervise, discipline, or offer protection to LaMoree' Moore. Their refusal to act in the face of known danger constitutes not only negligence, but gross institutional failure.

197.    Missouri's anti-hazing statute, § 578.365, RSMo establishes a clear public policy against conduct that endangers the mental or physical health of students. Defendants' actions—and inaction—violated this statute and directly contributed to LaMoree's psychological collapse and eventual suicide.

198.    Defendants owed LaMoree' Moore a duty of reasonable care to supervise their members, enforce their anti-hazing standards, and respond to credible reports of abuse. That duty was breached, and the foreseeable result was emotional breakdown, repeated institutionalization, and ultimately death.

199.    On November 17, 2022, LaMoree' was found hanging in the basement of her mother's home in St. Louis, Missouri. Five days earlier, she had recorded a video rehearsing her suicide using the same belt, apologizing for not being able to survive the abuse she endured. These facts underscore the severity and foreseeability of the emotional harm caused.

200.    As a direct and proximate result of Defendants' negligence, Plaintiffs suffered extreme emotional loss and LaMoree' Moore endured years of psychological torment ending in suicide. Defendants are therefore jointly and severally liable for negligent infliction of emotional distress and all resulting damages under Missouri law.

## DAMAGES

201.    As a direct and proximate result of Defendants' conduct—including sexual assault, hazing, harassment, emotional coercion, and institutional indifference—LaMoree' Moore suffered

sustained psychological trauma, severe emotional distress, and repeated psychiatric hospitalizations between 2020 and 2022.

202.   The trauma inflicted upon LaMoree' was not abstract or speculative but thoroughly documented through medical records, suicide notes, journal entries, video recordings, HIPAA-authorized disclosures, and witness testimony.

203.   LaMoree' was hospitalized at least four times at Touchette Regional Hospital, Memorial Hospital of Carbondale, SSM Health DePaul, and BJC Healthcare for acute psychosis, suicidal ideation, and depressive episodes, all of which treating physicians attributed to her experience with Alpha Kappa Alpha Sorority, Inc. and Alpha Phi Alpha Fraternity, Inc.

204.   Despite repeated warnings to Defendants—including national and regional officers of AKA and APA—no meaningful action was taken to intervene, investigate, or protect her.

205.   LaMoree's death by suicide on November 17, 2022 was entirely foreseeable and preventable. Her final days were marked by isolation and hopelessness, as evidenced by her handwritten funeral instructions, voice recordings of suicide rehearsals, and a video in which she apologizes for not being able to "withstand the torment."

Plaintiffs seek recovery of the following damages:

a.   Wrongful death damages under Missouri law, including pecuniary loss, loss of companionship, guidance, and emotional support;

b.   Survival damages, including pain and suffering experienced by LaMoree' prior to her death;

c.   Emotional distress damages suffered by Plaintiffs Leonetta Simpson and Andre Moore, as parents and next of kin;

d.      Out-of-pocket medical expenses, including hospitalization, psychiatric treatment, and crisis intervention, incurred during LaMoree's attempts at recovery;

e.      Funeral and burial expenses;

f.      Loss of society, grief, and mental anguish experienced by her family and close companions;

g.      Loss of future earnings, economic support, and household contributions that LaMoree' would have provided had she lived a full life.

206.    Plaintiffs allege that Defendants' actions—individually and collectively— reflect a gross deviation from societal norms and professional standards, and rise to the level of deliberate indifference and reckless misconduct warranting the imposition of punitive damages.

### PRAYER FOR RELIEF

As a direct result of Defendants' conduct, Plaintiffs have suffered substantial pecuniary losses, including the loss of LaMoree's companionship, emotional support, financial contributions, guidance, and irreplaceable emotional bond. Plaintiffs further seek recovery for grief, mental anguish, loss of society, and all compensable economic and non-economic damages permitted under Missouri law.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in their favor and award the following relief:

a.      Judgment against all Defendants, jointly and severally, on each and every cause of action stated herein;

b.      Compensatory damages in an amount to be determined at trial for the wrongful death, survival, and personal injuries sustained by LaMoree' Moore, including damages for emotional

distress, mental anguish, loss of consortium, and loss of enjoyment of life, pursuant to Mo. Rev. Stat. §§ 537.080 and 537.020;

c.    Punitive damages, as authorized under § 510.261, RSMo and applicable common law, for Defendants' willful, wanton, malicious, and grossly indifferent conduct in enabling and perpetuating the emotional and psychological abuse of LaMoree' Moore;

d.    Attorney's fees and litigation expenses pursuant to 42 U.S.C. § 1988(b) for the federal civil rights violations brought under 42 U.S.C. § 1985(3), and under any other applicable statutory provisions;

e.    Pre-judgment and post-judgment interest at the maximum rate allowed by law;

f.    Injunctive and equitable relief as may be appropriate, including but not limited to the implementation of mandatory reporting protocols, anti-hazing education requirements, and enhanced oversight mechanisms for collegiate organizations;

g.    Costs of suit and attorney's fees; and such other and further relief as the Court deems just, equitable, and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

*Respectfully Submitted*:

DENNIS SPURLING, P.L.LC. ATTORNEY AT LAW

/s/ Dennis D. Spurling
Dennis D. Spurling, Esq. Attorney-in-Charge
Texas State Bar No.: 24053909
Eastern District of MO  No. 24053909
J.P. Morgan Chase
Building 3003 S.
Loop West, Suite 400
Houston, Texas 77054
Telephone (713) 229-0770
Facsimile (713) 229-8444
ddspurling@dennisspurling.com


s/ Vanessa D. Gilmore_____
Vanessa D. Gilmore
Texas State Bar No.: 07960010
Pro Hac Vice Motion Pending
Roberts Markland LLP
2555 North MacGregor Way
Houston, Texas 77004
Telephone (713) 257-9753
vg@robertsmarkland.com
eservice@robertsmarkland.com