UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ESTATE OF LAMOREE' MOORE, *by and through its Administrator, Leonetta Simpson*, et al., ) ) ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 4:25-CV-936-ZMB |
| ) | |
| ALPHA KAPPA ALPHA SORORITY, ) INC., et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on several motions, including various Defendants' requests to dismiss, transfer venue, and take judicial notice. Docs. 82, 84, 86, 88, 95, 124. Significantly, all remaining Defendants argue that the Eastern District of Missouri is an improper venue for a case involving hazing at Southern Illinois University—Carbondale (SIUC), which Plaintiffs allege resulted in their daughter taking her own life. As almost none of the events giving rise to this claim occurred in Missouri, the Court transfers this case to the proper venue of the Southern District of Illinois.

## BACKGROUND

### I.     Factual Background[1]

LaMorre' Moore transferred to SIUC in 2019 with the hope of joining Defendant Alpha Kappa Alpha Sorority (AKA). Doc. 80 ¶ 50. Moore began the initiation process at SIUC that year, *id.* ¶ 80, but she immediately began experiencing problems, *id.* ¶ 51. Despite AKA policy

---

[1] At the motion to dismiss stage, the Court must accept the well-pled allegations and draw all reasonable inferences in favor of the non-moving party. *See Zutz v. Nelson*, 628 F.3d 451, 459 (8th Cir. 2010) (citation omitted). Likewise, when venue is challenged, the prevailing view appears to be that the Court "must accept as true all allegations in the complaint, at least where they are not contradicted by a defendant's affidavit, and resolve all conflicts in favor of the plaintiff." *See Catipovic v. Turley*, 2012 WL 2089552, at *15 (N.D. Iowa June 8, 2012) (collecting cases).

forbidding hazing, some of the initiation requirements included physically strenuous activity and, at times, even resulted in physical abuse. *Id.* ¶ 51. The hazing also included psychological elements, ranging from threats and intimidation to "forced isolation." *Id.* ¶ 52.

Following initiation, AKA sisters and members of a fraternity, Defendant Alpha Pi Alpha (APA), subjected Moore to "post-process," which involved more hazing. *See id.* ¶¶ 53, 56. In one instance, members of APA and AKA instructed Moore to give "sexually suggestive 'lap dances'" to members of APA. *Id.* ¶¶ 53, 58. Moore also received "hostile and coercive text messages" in October 2019. *Id.* ¶ 61. All of this occurred in Illinois or SIUC's campus. *See id.* ¶¶ 50–63.

At some point during her time at SIUC, Moore was sexually assaulted. *See id.* ¶¶ 73–74. As she later disclosed to medical professionals, she was sexually assaulted by multiple men, including those involved in the 2019 initiation process. *Id.* ¶ 54. While she did not specifically identify the perpetrators, it became apparent that an APA member was among those she accused of perpetrating the assault. *See id.* ¶ 55. Moore attempted to bring the issue up with Defendant Kyra Rogers, but the situation quickly deteriorated. *Id.* ¶ 73.

Moore then returned to Missouri in October 2020. *Id.* ¶ 74. After her return, Moore continued to receive "group communications" that contained "disparaging and coercive statements," *id.* ¶ 65, through "text messages, emails, and social media communications," *id.* ¶ 74. This ongoing abuse was part of a vague "multiyear scheme orchestrated and perpetuated" by AKA and APA members, although Rogers is the only identified individual who sent such communications. *Id.* ¶¶ 76, 163.

While in Missouri, the lasting impacts of the hazing became apparent. Moore was hospitalized multiple times from 2020 to 2022 for mental health concerns that professionals linked to trauma from the hazing she endured at SIUC. *Id.* ¶ 9. Her mother reached out to AKA officers

in October 2021 about "the severe psychological trauma [Moore] was experiencing" as a result of her participation in the sorority. *Id.* ¶ 80. Moore's mother sought some form of assistance from AKA, including by "reintegrate[ing] her daughter into the organization" to "help restore her dignity and support her emotionally," but that request fell on deaf ears. *Id.* ¶¶ 82–87. In early 2022, Moore was hospitalized for psychiatric treatment. *Id.* ¶ 54. Tragically, Moore took her life in November 2022 while at her family's home in Missouri. *Id.* ¶ 75.

## II.     Procedural Background

In June 2025, Plaintiffs Estate of Lamoree' Moore, Loenetta Simpson (Moore's mother), and Andre Moore (Moore's father) (collectively "the Estate") filed their complaint. Doc. 1. Several months later, the Estate obtained leave and filed an Amended Complaint, which brings several causes of action: wrongful death, a "survival action," negligent supervision, hazing, negligent entrustment, intentional infliction of emotion distress, negligent infliction of emotional distress, civil conspiracy, and conspiracy to interfere with civil rights. *Id.* ¶¶ 100–200. The majority of the claims are brought under Missouri law, except for the last claim. *Id.* The Amended Complaint initially listed 27 Defendants, but 12 of them have since been dismissed, *see* Docs. 114, 118.

The remaining Defendants filed several motions to dismiss, Docs. 82, 84, 86, 88, 124, and all functionally raise the same arguments. Specifically, they raise issues related to standing, personal jurisdiction, failure to state a claim, choice of law, and venue. *See, e.g.*, Doc. 83. The Estate opposed these motions, Docs. 83, 90, 92, 93, 94, 127, and the respective Defendants replied, Docs. 99, 96, 97, 100, 128.

## LEGAL STANDARD

A defendant may respond to a complaint by moving to dismiss or transfer a case for improper venue. FED. R. CIV. P. 12(b)(3). In an action such as this, venue is proper in "(1) a judicial

district in which any defendant resides, if all defendants are residents of the [forum] State," "(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred," or, if neither of those apply, (3) "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b). "When venue is challenged, the court must determine whether the case falls within one of [these] three categories." *Atl. Marine Const. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 56 (2013). "If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a)." *Id.* A plaintiff bears the initial burden of showing that their chosen venue is proper. *See, e.g.*, *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004); *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005). But once the Plaintiff puts forward facts sufficient to support venue in the chosen forum, the burden is on the defendant to show why the chosen forum is improper through affidavit and facts outside of the pleadings. *C.H. Robinson Worldwide v. Tu*, 2019 WL 7494686, at *2 (D. Minn. Dec. 20, 2019). When considering venue under section 1392(a), the Court does not "ask which district among two or more potential forums is the 'best' venue," but rather "whether the district the plaintiff chose had a substantial connection to the claim." *Setco Enters. v. Robbins*, 19 F.3d 1278, 1281 (8th Cir. 1994).

## DISCUSSION

While Defendants raise a number of arguments in support of dismissal, the Court need only address their arguments regarding improper venue.[2] Because the Defendants are of diverse citizenship, the venue analysis turns on whether "a substantial part of the events or omissions giving rise to the claim occurred" in this District. *See* 28 U.S.C. § 1391(b)(2). The Eighth Circuit

---

[2] While certain Defendants minimally developed the argument in their joint memorandum in support of dismissal, Doc. 89, they all assert improper venue, Doc. 88 ¶ 6, and the Court grants their motion in this respect because the arguments advanced by the other Defendants apply equally to them.

has not developed its own standards for assessing whether events are "substantial" within the meaning of section 1391. *See Setco Enters.*, 19 F.3d at 1281 (citing out of circuit authority for the proposition that "venue is proper if the events in a district 'were not insubstantial and the forum is a convenient one balancing the equities and fairness to each party'"). But an important factor to consider is the "conduct of the parties" in relation to the "nature of the dispute." *Catipovic v. Turley*, 2012 WL 2089552, at \*15 (N.D. Iowa June 8, 2012) (citations omitted). "When determining whether a substantial part of the events occurred in a forum, the court's focus must be on relevant activities of the defendant in the forum state, not on the effect of those activities on the plaintiff in the forum state." *Paragon Freight Sys. v. River City Ins. Agency*, 2021 WL 3636062, at \*3 (D. Minn. Aug. 17, 2026) (quotation and emphasis omitted).

Defendants all essentially contend that the substantial part of the events occurred in Illinois, not Missouri. *See, e.g.*, Doc. 83 at 11–12. The Estate claims Defendants "do[] not address the factual allegations in the complaint that detail the communications directed to Moore in Missouri," and argue that it makes "no sense to transfer a wrongful death case" out of the state where the death occurred. Doc. 91 at 8. Among their replies, Defendants argue that the "general allegations about unidentified messages" are insufficient to show that they constitute substantial events giving rise to the claims, especially when the unspecified communications are compared with the Estate's "detailed factual allegations about the events occurring in Illinois." Doc. 97 at 6–7.

Defendants correctly assert that the Eastern District of Missouri is not the proper venue for this dispute. The nature of this suit relates to hazing that occurred at SIUC. The Amended Complaint provides specific and detailed instances of harassment by the named Defendants while Moore was at college in Illinois. Doc. 80 ¶¶ 51–52. While the effects of this conduct perhaps were felt by Moore most acutely in Missouri, that alone cannot confer venue. *See Woodke v. Dahm*, 70

5

F.3d 983, 985 (8th Cir.1995) ("[I]f Congress had wanted to lay venue where the plaintiff was residing when he was injured, it could have said so expressly."); *see also Ragsdale v. Byassee*, 2011 WL 4499349, at *2 (E.D. Ark. Sept. 29, 2011) (rejecting a claim that the place a plaintiff receives medical treatment can create proper venue because it "would mean, in effect, that in nearly every personal injury case venue would lie where the plaintiff resides because an injured person typically will receive medical treatment in the state where he resides"). Based on the nature of the dispute and on where Defendants' conduct occurred, the substantial events occurred in Illinois, not Missouri.

Nor is venue in this District saved by virtue of the alleged text messages alone. Venue is proper where a *substantial* amount of activity occurred that gives rise to the claims. *See Catipovic*, 2012 WL 2089552, at *15. But the Estate's underdeveloped allegations regarding text messages do not constitute a substantial part of the events. The Amended Complaint is bereft of details on the frequency, content, or the identity of the alleged senders.[3] Only Rodgers is identified by name. *See* Doc. 80 ¶ 163. But even that allegation describes the messages as "repeated[,] coercive[,] and threatening," *id.*, with little in way of nonconclusory facts. In any event, it is unclear how the unilateral actions of one co-defendant could constitute a substantial part of the events as it relates to all defendants in a case, especially when there is no way to evaluate the substance of the interactions. Moore's mental-health treatment and death are the only concrete events that occurred

---

[3] These underdeveloped allegations also raise serious doubts about whether this Court could obtain personal jurisdiction over certain Defendants because it is wholly unclear which Defendants would have made "sufficient minimum contacts" with Missouri such that they could "reasonably anticipate being haled into court" here. *Federate Mut. Ins. Co. v. FedNat Holding Co.*, 928 F.3d 718, 720 (8th Cir. 2019). For instance, there is no allegation that other named Defendants sent messages to Moore. And in any event, "telephone calls, written communications, and even wire-transfers to and from a forum state do not create sufficient contacts to comport with due process such that a [defendant] could reasonably anticipate being haled into court there." *Deloney v. Chase*, 755 F. App'x 592, 596 (8th Cir. 2018) (quotations omitted). Thus, even if the Eastern District of Missouri were a proper venue, it is highly unlikely that specific personal jurisdiction exists as to at least some Defendants. And if the Court cannot exercise personal jurisdiction over all of the Defendants, then venue in the Eastern District of Missouri is also improper. *See Richards v. Aramark Servs.*, 108 F.3d 925, 928 (8th Cir. 1997) (affirming dismissal for lack of venue where the court lacked personal jurisdiction over on of the defendants).

in Missouri, and the Estate suggests that the gravity of this effect is precisely why the Court should find that venue is proper here. *See, e.g.*, Doc. 91 at 8. But at least for purposes of venue, that consideration merely identifies where the ultimate result of Defendants' conduct occurred, not about where Defendants' substantial acts giving rise to the claim, which is what matters for venue. *See Paragon Freight Sys.*, 2021 WL 3636062 at \*3. As such, Illinois—not Missouri—is the proper venue for this action.[4]

On a final note, the Court finds that the interest of justice weighs strongly in favor of transfer, rather than dismissal. When an action is filed in the wrong venue, the Court may either "dismiss, or if it be in the interest of justice, transfer [the improperly filed] case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Most Defendants have, by their representations to the Court, consented to be sued in Illinois and concede that the Southern District of Illinois is the appropriate venue. *See* Doc. 83 at 12; Doc. 85 at 12; Doc. 87 at 12; Doc. 125 at 13. The majority have even identified transfer as appropriate here. *But see* Doc. 88. In any event, the Court finds that the interests of justice warrant transfer because of the amount of effort Plaintiffs has expended in serving all Defendants and to allow for a speedy resolution of this case.

---

[4] Even assuming that venue is proper in this District, the Court still would transfer this case to the Southern District of Illinois, as it is the most convenient forum. Federal courts have "the authority under 28 U.S.C. § 1404(a) to *sua sponte* transfer a civil action to any other district where it might have been brought for the convenience of parties and witnesses, in the interest of justice." *Clark v. Transamerica Life Ins. Co.*, 2010 WL 2771916, at \*3 (E.D. Ark. June 18, 2010) (citations omitted). A transfer under section 1404(a) is proper when the interests of justice and balance of convenience favors transferring the case to a more appropriate forum. *See C-Mart, Inc. v. Metropolitan Life Ins. Co.*, No. 4:13-CV-52-AGF, 2013 WL 2403666, at \*3 (E.D. Mo. May 31, 2013). There are a number of relevant factors, *id.*, but the key considerations here can be summarized succinctly. Even assuming Missouri law applies to this case, most if not all of the witnesses, events, and records are located in Illinois. Further, the comparative costs of litigating in Illinois are relatively low for Plaintiffs, an Illinois judgment can be enforced easily in Illinois against Illinois residents, and there are no obstacles to a fair trial in Illinois. And given that every Defendant has purposely availed themselves of Illinois through their personal conduct there, the same personal jurisdiction concerns at issue in this Court will not be present in the transferee court. As such, even if Missouri were a proper venue, transfer still would be warranted.

**CONCLUSION**

Accordingly, the Court **GRANTS IN PART** Defendants' [82] [84] [86] [88] [124] motions to dismiss insofar as they seek to transfer to the Southern District of Illinois for improper venue. The Court defers ruling on the substantive motion to dismiss and all other motions so that the transferee court may address these issues in the first instance.

The Court will issue a separate Order of Transfer to accompany this order.

So ordered this 12th day of June 2026.

ZACHARY M. BLUESTONE
UNITED STATES DISTRICT JUDGE

8